# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| DUANE OLBINSKI and CYNTHIA JOHNSON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br>v.<br><br>OLIVER ADJUSTMENT COMPANY, INC.,<br><br>Defendant. | Case No.: 18-cv-1917<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection Practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Duane Olbinski is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Cynthia Johnson is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from them a debt allegedly incurred for personal, family, or household purposes.

6. Each Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that they engaged in a consumer transaction.

7. Defendant Oliver Adjustment Company, Inc. ("OAC") is a debt collection agency with its principal place of business located at 908 8th Avenue, Baraboo, WI 53913.

8. OAC is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. OAC is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

10. OAC is licensed as a "Collection Agency" by the Division of Banking in the Wisconsin Department of Financial Institutions pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

11. OAC is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3),

## FACTS

### *Facts Related to Plaintiff Olbinski*

12. On or about January 25, 2018, OAC mailed a debt collection letter to Plaintiff Olbinski regarding an alleged debt owed to "Milwaukee Radiologists LT" ("Milwaukee Radiologists") A copy of this letter is attached to this complaint as Exhibit A.

13. Upon information and belief, the alleged debt referenced in Exhibit A was the result of a transaction for personal medical services with an agreement to defer payment. Plaintiff Olbinski was not required or expected to pay for medical services at the time of service, instead receiving a bill several days or weeks later. *Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for

2

goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment.'").

14. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff Olbinski inserted by computer.

15. Upon information and belief, Exhibit A is a form debt collection letter used by OAC to attempt to collect alleged debts.

16. Exhibit A includes the following representations:

| Creditor | Regarding | Principal | Interest | Amt Owed |
|---|---|---|---|---|
| MILWAUKEE RADIOLOGISTS LT | DUANE OLBINSKI | 49.00 | 0.00 | 49.00 |
| MILWAUKEE RADIOLOGISTS LT | DUANE OLBINSKI | 49.00 | 0.00 | 49.00 |
| | | 98.00 | 0.00 | 98.00 |

17. Exhibit A is confusing and misleading to the unsophisticated consumer.

18. Exhibit A threatens to collect "Interest." Although the amounts of interest in Exhibit A is $0.00, the letter implies that there could be interest added to the debt in a future letter. *See, e.g. Tylke v. Diversified Adjustment Serv.*, No. 14-cv-748; 2014 U.S. Dist. LEXIS 153281, *7 (E.D. Wis. Oct. 28, 2014) ("the inclusion of a collection fee, even one showing a balance of zero, could imply the future possibility of one.").

19. Upon information and belief, Milwaukee Radiologists does not actually add interest to consumer collection accounts.

20. Upon information and belief, Milwaukee Radiologists did not authorize OAC to add interest to collection accounts OAC collects on behalf of Milwaukee Radiologists.

21. The unsophisticated consumer interprets references to "interest" in collection letters, even when the amount is $0.00, as representations that the debt collector intends to seek interest in future letters.

3

22. Further, even if Milwaukee Radiologists and OAC was permitted to add interest to Plaintiff Olbinski's account, the representation is false and misleading when Milwaukee Radiologists and OAC never intended to do so. *See Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 370 (7th Cir. 2018) ("a debt collector is only entitled to safe harbor protection if 'the information he furnishes is accurate and he does not obscure it by adding confusing other information (or misinformation).'"); *Ruge v. Delta Outsource Grp., Inc.*, No. 15-cv-10865, 2017 U.S. Dist. LEXIS 35047, 2017 WL 959017, at *3 (N.D. Ill. Mar. 13, 2017) (the defendant was not immune from liability because "[t]he safe harbor language that says the amount of the debt might change because of interest was not true in this particular case").

23. Because Milwaukee Radiologists does not intend to impose interest and has not authorized OAC to collect interest, the reference to interest in Exhibit A falsely states or implies that the amount of the debt would increase over time, when it would not. *Boucher*, 880 F.3d at 367 ("[t]his is not the type of legal knowledge we can presume the general public has at its disposal.") (quoting *Lox v. CDA, Ltd.*, 689 F.3d 818, 825 (7th Cir. 2012)).

24. Plaintiff Olbinski was misled and confused by Exhibit A.

25. The unsophisticated consumer would be misled and confused by Exhibit A.

26. Plaintiff Olbinski had to spend time and money investigating Exhibit A, and the consequences of any potential responses to Exhibit A.

### *Facts Related to Plaintiff Johnson*

27. On or about March 6, 2019, OAC mailed a debt collection letter to Plaintiff Johnson regarding an alleged debt owed to "ERMED, SC." A copy of this letter is attached to this complaint as Exhibit B.

4

28.     Upon information and belief, the alleged debt referenced in Exhibit B was the result of a transaction for medical services for the son of Plaintiff with an agreement to defer payment. Plaintiff was not required or expected to pay for medical services at the time of service, instead receiving a bill several days or weeks later.

29.     Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff Johnson inserted by computer.

30.     Upon information and belief, Exhibit B is a form debt collection letter used by OAC to attempt to collect alleged debts.

31.     Upon information and belief, Exhibit B is the first written communication Defendant mailed to Plaintiff regarding this alleged debt.

32.     Exhibit B includes a statement which largely reflects the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors provide alleged debtors along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, that you dispute the validity of this debt or any portion thereof this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

33.     Exhibit B additionally includes the following representations:



> If you wish to pay by VISA, MasterCard, American Express, or Discover, fill in the information below and return the entire letter to us. **A three percent (3%) processing fee (not to exceed $25.00) will be charged for all credit card payments in Alabama, Delaware, Indiana and Wisconsin.**

34.     Exhibit B is confusing and misleading to the unsophisticated consumer as to whether the three percent processing fee would apply to payments made via debit card.

5

35. Wis. Admin. Code DFI-Bkg 74.11(2)(d) provides: "A fee not to exceed the lesser of $25 or 3% of the payment amount, not including the fee, may be added to the account of the debtor when the debtor makes a payment using a credit card or debit card."

36. On its face, however, Exhibit B only states that the processing fee would be "charged for all credit card payments."

37. Although Exhibit B does not disclose whether the processing fee would be applied to payments made by debit card, a significant fraction of consumers would understand the statement "A three percent (3%) processing fee (not to exceed $25.00) will be charged for all credit card payments" to mean that a processing fee would be imposed for payments made by debit card.

38. People often refer to debit cards and credit cards collectively as "credit cards." *See, e.g., Travelers Prop. Cas. Co. of Am. v. Kan. City Landsmen, L.L.C.*, 592 Fed. Appx. 876, 878 (11th Cir. 2015) ("The term 'credit card' as used in this opinion includes 'debit cards' as well. For the sake of simplicity, however, we refer to credit cards only."); *State v. Levell*, 282 P.3d 576, 578 n.6 (Haw. 2012) ("Petitioner uses 'credit cards' and 'debit cards' interchangeably. This opinion refers to the items allegedly stolen as 'credit cards.'").

39. Notwithstanding the colloquial use of "credit cards" as encompassing debit cards, there are important differences between the two types of cards. Importantly, the interchange fees for credit cards is often greater than for debit cards. *See,* https://www.hostmerchantservices.com/current-us-interchange-rates/ ("Current US Interchange Rates") (accessed: March 28, 2019):

6

| Common Visa and MasterCard Interchange Rates | |
|---|---|
| Card Type | Interchange Rate |
| Visa Debit CPS | 0.800 % + 15¢ |
| Visa Debit CPS Regulated | 0.050 % + 22¢ |
| MasterCard Debit | 1.050 % + 22¢ |
| MasterCard Debit Regulated | 0.050 % + 15¢ |
| Visa Credit CPS Retail | 1.510 % + 10¢ |
| MasterCard Credit Consumer | 1.580 % + 10¢ |

40. Further, while consumers often use the terms "credit card" and "debit card" interchangeably, a significant fraction of consumers understands that these differences are important because many retailers, *e.g.,* Woodman's Markets (a regional supermarket chain based in Wisconsin), accept debit cards but do not accept credit cards at most locations. OnMilwaukee, "Woodman's Markets get mixed reviews from shoppers," published March 12, 2012, available at: https://onmilwaukee.com/market/articles/woodmansmarkets.html (accessed March 28, 2019) ("Woodman says the stores are able to keep prices low because they buy direct from manufacturers. Also, they do not accept credit cards – cash, check or debit cards only – which saves on credit card costs.").

41. The processing fee language in Exhibit B is ambiguous as to whether OAC will apply the processing fee to consumers who pay by debit card.

42. Plaintiff Johnson was misled and confused by Exhibit B.

43. The unsophisticated consumer would be misled and confused by Exhibit B.

44. Plaintiff Johnson had to spend time and money investigating Exhibit B, and the consequences of any potential responses to Exhibit B.

## *The FDCPA*

45. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp. Solutions*, 2018 U.S. Dist. LEXIS 50016, *12, 2018 WL 1513043 (E.D. Wis. March 27, 2018); *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the

FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

46. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive

debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

47. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

48. 15 U.S.C. § 1692e(2) specifically prohibits "the false representation of the character, amount, or legal status of any debt [or] any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt."

49. 15 U.S.C. § 1692e(5) specifically prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken."

50. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt.

51. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

52. 15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

### *The WCA*

53. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

54. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v.

*Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

55. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

56. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

57. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

58. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

59. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

60. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

61. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

62. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . which can reasonably be expected to threaten or harass the customer or a person related to the customer."

63. The Wisconsin Department of Financial Institutions, which is tasked with the administrative regulation of licensed collection agencies, has found that a collection agency "can be reasonably expected to threaten or harass the debtor," when it engages in "conduct which violates the Federal Fair Debt Collection Practices Act." Wis. Admin. Code § DFI-Bkg. 74.11(9).

64. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

65. Wis. Stat. § 427.104(1)(L) also specifically prohibits a debt collector from "[t]hreaten[ing] action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

66. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

67. Count I is brought on behalf of Plaintiff Olbinski.

68. The references in OAC's letters to "Interest" are false, misleading and confusing.

69. OAC threatened to add interest to Plaintiff Olbinski's debts when Milwaukee Radiologists does not add interest to accounts such as Plaintiff's as a matter of course, and Milwaukee Radiologists did not authorize OAC to collect interest on Plaintiff's account.

70. OAC's misrepresentation of the amounts it would attempt to collect is an unfair and/or unconscionable method by which to try and collect an alleged debt.

71. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1).

## COUNT II – WCA

72. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

73. Count II is brought on behalf of Plaintiff Olbinski.

74. Exhibit A threatens to collect interest, even though neither OAC nor Milwaukee Radiologists add interest to accounts such as Plaintiff's.\

75. Defendant is licensed as a "Collection Agency" by the Department of Financial Institutions.

76. Exhibit A similarly violates the FDCPA.

77. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

13

## COUNT III – FDCPA

78. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

79. Count III is brought on behalf of Plaintiff Johnson.

80. By stating "A three percent (3%) processing fee (not to exceed $25.00) will be charged for all credit card payments," Exhibit B is misleading to the unsophisticated consumer as to whether the three percent processing fee would apply to payments made via debit card.

81. Furthermore, Exhibit B threatens consumers with the prospect of a processing fee that Defendant cannot and/or does not charge.

82. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1).

## COUNT IV – WCA

83. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

84. Count IV is brought on behalf of Plaintiff Johnson.

85. By stating "A three percent (3%) processing fee (not to exceed $25.00) will be charged for all credit card payments," Exhibit B is confusing and misleading to the unsophisticated consumer as to whether the three percent processing fee would apply to payments made via debit card.

86. Furthermore, Exhibit B threatens consumers with the prospect of a processing fee that Defendant cannot and/or does not charge.

87. Exhibit B violates the FDCPA.

88. Defendant is licensed as a "Collection Agency" by the Department of Financial Institutions.

89. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

90. Plaintiffs bring this action on behalf of two classes.

91. Class I consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) between December 5, 2017 and December 5, 2018, inclusive, (e) that was not returned by the postal service. Plaintiff Olbinski is the proposed class representative for Class I.

92. Class II consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit B</u> to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) between March 29, 2018 and March 29, 2019, inclusive, (e) that was not returned by the postal service. Plaintiff Johnson is the proposed class representative for Class II.

93. Each class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of each class.

94. There are questions of law and fact common to class members, which common questions predominate over any questions that affect only individual class members. The predominant question is whether the Defendant complied with the FDCPA and the WCA.

95. Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

96. Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

97. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

98. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: March 29, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com